### BURGESS BATTERY CO. v. COE, Com'r of Patents.

### Civil No. 302.

District Court of the United States for the District of Columbia.

Aug. 14, 1940.

Clarence M. Fisher, of Washington, D. C., for plaintiff.

W. W. Cochran and Edward T. Newton, of U. S. Patent Office, both of Washington, D. C., for defendant.

MORRIS, Justice.

This is a proceeding instituted under the provisions of Section 4915 of the Revised Statutes of the United States, 35 U.S.C.A. § 63. Henry W. Porth, on February 4, 1936, filed an application, designated as Serial No. 62,302, in the Patent Office of the United States for letters patent, relating to closures for dry cell batteries, containing a socket connection for attaching a pronged plug connection. The sockets are embedded in flexible or pliant rubber which may yield to accommodate plug prongs of slightly different spacings, and such plurality of sockets to provide several different spacings to accommodate a number of prong spacings. The construction is particularly adapted for batteries used in conjunction with hearing-aid devices. The claims in the suit were finally reduced to claims 6 to 8, inclusive, and 14 to 18, inclusive, and these were rejected by the primary examiner and, upon appeal, the action of the primary examiner was affirmed by the Board of Appeals.

The references relied upon are:

Kammerhoff, 1,266,814, May 21,1918.

Watts, 1,918,070, July 11, 1933.

Miller, 1,981,460, November 20, 1934.

Douglas, 1,982,501, November 27, 1934.

Koch, 1,983,037, December 4, 1934.

Groves (Br.), 315,015, July 4, 1929.

British T. H. Co. (Br.), 345,116, March 19, 1931.

Grunberg (Ger.), 525,325, May 22, 1931.

Kammerhoff shows a rigid terminal socket, mounted on a dry cell battery, for use with flexible prongs. This invention could not possibly serve the purpose, or accomplish the object, which is accomplished by the disclosure here under consideration. As will be pointed out hereinafter, the manufacturers of hearing-aid devices do not equip such devices with flexible prongs, or in any other way undertake to make such devices adaptable to a standard battery. That result, if it can be obtained, must be found in the ingenuity of the maker of a battery so adaptable that it may be used with hearing devices, primarily made for use with a battery produced either by the hearing-aid manufac-

turer, or one specially constructed for use with such device.

Watts shows spring socket contacts, mounted in resilient material, permitting a limited relative movement between the contacts, thus insuring good electrical connection with bayonet contacts. This socket is on the end of a connection cord. Nowhere is there found in the Watts patent any disclosure having the purpose or the result of making the connections there disclosed adaptable to more than one type of connection. The sole object sought and the sole result accomplished in making use of the resilient material there employed was to afford better connection.

Miller shows a plug and socket cable connector with the sockets mounted in soft rubber with a spring around each individual contact. One of the primary objects of the Miller patent is to secure a waterproof connection, and there no object or result, such as is sought and accomplished by the disclosure here under consideration, was disclosed.

Douglas shows a rolled spring strip forming sockets for connecting two or more cables. While the claims here under consideration employ a metal strip somewhat similar to that used by Douglas, the Douglas disclosure could not possibly accomplish the result that is accomplished by the claims here under consideration.

Koch shows a socket contact, embedded in sealing material in a battery, the contacts being formed of spring metal, bent to form a resilient contact. There the battery construction had particular reference to dry batteries, employed for energizing hearing-aid systems for the deaf, but nowhere is there disclosed any qualities for making such batteries adaptable to hearing-aid systems of different space connections.

Groves shows a wall socket with a plurality of sockets of different spacings to accommodate plugs of different sizes. Had Groves made use of soft or pliant rubber to thus enable a further variety of different space plugs to be used, it might be then said that his construction definitely pointed to what is accomplished by the disclosures here under consideration. As it is, I do not believe that the Groves patent had such effect.

The British Thomson-Houston Co. shows an electrical connection, the object of which was to improve the electrical contact of such connection, and to dispense with contact terminals of springy or resilient character.

The German patent to Grunberg shows a plug and socket connection, in which the contact parts are all, or in part, arranged in inclined position with respect to one another in a plug receptacle of flexible material, and this for the purpose of obtaining a more satisfactory and lasting electrical contact or connection.

The evidence introduced at the hearing in this cause shows the large number of hearing-aid devices so constructed that almost all of them require a battery specially made for such device. The different number of prongs, or the different spacings of prongs, or the different size of the prongs, made it necessary for a battery dealer to carry a very large variety of batteries if the user of any one of a large number of hearing-aid devices was to be seasonably served. With the advent of the device produced by the plaintiff, a battery could be provided to a user of any one of substantially all of the hearing-aid devices on the market. While the commercial success of the plaintiff's construction is not in itself conclusive on the question of whether or not such construction involved invention, it is strong evidence that the art as it was theretofore known did not show an obvious solution to a very great need. If making use of known constructions in such combination and arrangement as produce new and useful results is not to be considered as invention, then it is not to be thought that there will be such continued effort and experimentation as was sought to be encouraged by the provisions of the Constitution and patent laws of our country. Reaching the conclusion, as I do, that the claims here involved disclose a patentable construction, the relief prayed for in the complaint will be granted, and the Commissioner of Patents authorized to issue letters patent.